**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | Crim. No. 09-CR-10166-MLW |
| | : | |
| **SALVATORE F. DIMASI,** | : | |
| **JOSEPH P. LALLY, Jr.,** | : | |
| **RICHARD W. McDONOUGH,** | : | |
| **and** | : | |
| **RICHARD D. VITALE** | : | |
| **Defendants** | : | |

**OPPOSITION OF UNITED STATES TO DEFENDANTS' MOTION TO
DISMISS SUPERSEDING INDICTMENT FOR ABUSE OF GRAND JURY**

The United States, by and through the undersigned Assistant United States Attorneys, hereby opposes the defendants' Motion to Dismiss the Superseding Indictment for Grand Jury abuse.[1] The defendants claim that the superseding indictment was the product of the government's improper use of the grand jury to prepare for trial of the original indictment. The defendants have not met their burden to show it was the government's sole or dominating purpose to continue the grand jury investigation to collect evidence relating to the pending charges. Nor have they shown – nor can they – that the addition of the Hobbs Act charges and other allegations were in any way improper. Their motion should be denied.

---

[1] Defendants DiMasi and Vitale filed the original motion [Docket #137] to which defendants Lally and McDonough have moved to join.

**I.    FACTUAL BACKGROUND[2]**

In or around December, 2008, a federal grand jury began an investigation centered around the defendants' involvement in procuring legislation and contracts favorable to Cognos. A number of categories of records were received by subpoena from Vitale, Caturano & Co ["VCC"] by way of a rolling production. Among these records were some emails sent and received by Richard Vitale relating to Genesis Management Group, LLC, a company owned by Vitale, "GP-1" and "GP-2" referenced in the superseding indictment. One such email sent by GP-1 to Vitale, which is Overt Act #48 in the superseding indictment, asked Vitale to call him "since I have an idea about an arrangement which will benefit you, me, Paul and Sal." Other emails indicated that Vitale, GP-1, and GP-2 discussed how DiMasi could use his status as Speaker to help Genesis get business in the public and private sector. While the investigation focused primarily on Cognos-related matters, some witnesses, including GP-1 and GP-2, were questioned about Genesis and DiMasi's relationship to it.

On June 2, 2009, the original indictment was presented to the grand jury. The indictment charged the defendants with conspiring to commit honest services mail and wire fraud in violation of 18 U.S.C. § 371 and committing and aiding abetting the commission of honest services mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343, 1346 and 2. The indictment alleged that the defendants conspired to commit honest services fraud in two ways**:** (1) **"**arranged to have regular payments made to DiMASI from Cognos for the purpose of influencing DiMASI to use his authority as Speaker of the House to assist the interests of Cognos for the financial benefit of the

---

[2]Contemporaneous with this filing, the government has requested leave to file an *ex parte in camera* submission which explains in greater detail grand jury proceedings in this matter.

coconspirators" [¶13]; and (2) "deceived the citizens of Massachusetts by DiMASI deliberately failing to disclose his financial ties to Cognos, as well as the personal enrichment of his friends from his official actions." [¶¶ 14,15]. See United States v. Woodward, 149 F.3d 46, 57 (1st Cir. 1998)(identifying two ways in which public official's honest services can be stolen from the public).

The original indictment did not include any reference to Massachusetts conflict of interest disclosure laws because under First Circuit jurisprudence, proof of a state law violation is not required for a conviction for honest services fraud. See United States v. Sawyer, 85 F.3d 713, 726 (1st Cir. 1996). The original indictment also did not include any allegations or charges relating to Genesis because the investigation was yet not completed to determine if there proof beyond a reasonable doubt of the commission of a crime related to DiMasi's role in connection with Genesis.

On June 29, 2009, the Supreme Court granted certiorari in Weyhrauch v. United States, No. 08-1196, on the following question: Whether, to convict a state official for depriving the public of its right to the defendant's honest services through the non-disclosure of material information, in violation of the mail fraud statute (18 U.S.C. §§ 1341 and 1346), the government must prove that the defendant violated a disclosure duty imposed by state law.

On July 2, 2009, VCC made its final rolling production which contained new Genesis-related emails that were explosive from an evidentiary point of view in proving DiMasi's future hidden interest in Genesis. These emails, which constitute Overt Acts 53-55 in the superseding indictment, in the government's view, showed that, consistent with GP-1's original email about an "arrangement" that could benefit all four of them, GP-1 proposed a four-way partnership for Genesis which included DiMasi. Vitale later in his email clarified that he would take care of DiMasi out of his third of the ownership for the time being.

The government continued to investigate both through the grand jury and agent interviews whether any new charges or new defendants related to the Genesis matter could be brought. Specifically, the investigation sought to determine further if DiMasi exerted any influence on behalf of Genesis in exchange for an undisclosed future interest. See United States v. Potter, 463 F.3d 9, 19 (1st Cir. 2006)("[A] payment that had been promised in advance but paid afterwards could be unlawful.")

On July 7, 2009, the above-referenced emails were presented to the grand jury by FBI Special Agent Marc Toulouse. Also two Genesis employees, RK and EC, testified with little significant information. In July through October, 2009, agents conducted interviews with several city, state and federal procurement and other officials but uncovered no evidence of contacts by DiMasi or others on behalf of Genesis. On September 15, 2009, and October 6, two other witnesses testified before the grand jury related to Genesis matters. October 13, 2009, AR, an auditor in the U.S. Attorney's Office, testified that House of Representatives documents showed no disclosure made by DiMasi regarding Cognos, which related to the addition of state law duties in the superseding indictment. She also testified about a Vitale calendar entry showing a meeting with Vitale, McDonough and Lally on May 17, 2006.

On October 13, 2009, the superseding indictment was presented to the grand jury and returned. This indictment superseded the original indictment in the following ways: (1) added in ¶10 that in addition to a general fiduciary duty owed by DiMasi to the Commonwealth of Massachusetts and its citizens, DiMasi had certain duties and obligations imposed by state law; (2) added Count 9 charging DiMasi with Hobbs Act extortion under color of official right in violation of 18 U.S.C. § 1951 and added that violation as an object of the charged conspiracy in ¶12c; (3)

added in ¶14 that "[i]t was a further object of the conspiracy for DiMASI to receive, and cause others to receive, money from LALLY and Cognos in return for performing official acts as a member and Speaker of the Massachusetts House of Representatives that would further the interests of LALLY and Cognos in the Commonwealth of Massachusetts"; (4) added allegations in Overt Acts 48-55 that DiMasi had a future hidden interest in Genesis; (5) added two additional payments of $4,000 from Topazio to DiMasi in Overt Acts 84 and 88 which had not been specified in the original indictment; and (6) added Overt Act 56 alleging a meeting on May 17, 2006 between Lally, McDonough and Vitale.

The allegations concerning state law were included in light of the potential outcome of the Supreme Court's decision in Weyhrauch. The Hobbs Act extortion under color of official right charges were added for a number of reasons. Although the original indictment charging honest services fraud in the government's view proceeded clearly on both a bribery and concealed conflict of interest theory, at the hearing on June 17, 2009 defense counsel claimed the indictment failed to give the defendants notice of what "theory of criminality" was alleged, arguing that "the traditional theories [of honest services fraud] were not delineated." See Transcript of June 17, 2009 Hearing, at 15-16. The Hobbs Act allegations make explicit that money from Lally and Cognos were alleged to have been received by DiMasi and others in return for DiMasi's performing of official acts. Second, the uncertainty of the fate of honest services law has become more real as exemplified by the Supreme Court's decision to review the statute itself and perhaps whether it is unconstitutionally vague. See Skilling v. United States, No. 08-1394, cert. granted October 13, 2009.

As for the Genesis allegations, the investigation did not result in sufficient evidence to bring additional charges or add additional defendants. Although no new charges were added, the

allegations are relevant to fully explain the chain of events that unfolded as part of the charged conspiracy, to show the nature of the illegal relationship between Vitale and DiMasi, and to explain some of their motives and conduct. *See generally* Government's Opposition to Motion to Strike Genesis Allegations. In particular, Vitale's providing to DiMasi the hidden future interest in Genesis, along with the $250,000 line of credit he extended to DiMasi on June 22, 2006 [Overt Act 58], are probative of why Vitale formed WN Advisors around the same time and was inserted into the Cognos deals, resulting in a $600,000 pay day to him when Cognos already had a retained lobbyist in McDonough.[3] Newly added ¶14 in the superseding indictment reflects that it was not just an object of the conspiracy for DiMasi to receive money but to cause others [Vitale and McDonough] to receive money as well from Lally and Cognos in return for DiMasi's performance of official acts.

## II. ARGUMENT

### A. Legal Principles

It is well-settled that grand jury proceedings are entitled to a presumption of regularity, United States v. R. Enterprises, Inc., 498 U.S. 292, 300-01(1991), and this presumption attaches even after the grand jury has returned an initial indictment. United States v. Flemmi, 245 F.3d 24, 28 (1st Cir. 2001). "The investigative power of a grand jury does not necessarily end with the return of an initial indictment. * * * Post-indictment action is permitted to identify or investigate other individuals involved in criminal schemes or to prepare superseding indictments against persons already charged." United States v. Jones, 129 F.3d 718, 723 (2nd Cir. 1997). This is because "[a]

---

[3] McDonough received $300,000 from Lally for his part, in addition to his $25,000 monthly fee from Cognos.

grand jury investigation is not fully carried out until every available clue has been run down an all witnesses examined . . ." Branzburg v. Hayes, 408 U.S. 665, 701 (1972).  Thus, "as a general rule, 'evidence obtained pursuant to [an ongoing grand jury] investigation may be offered at trial of the initial charges.'" Id., quoting United States v. Leung, 40 F.3d 577, 581 (2nd Cir. 1994).

At the same time, the government cannot use the grand jury for the "primary purpose of helping the prosecution prepare indictments for trial." In re Grand Jury Proceedings (Fernandez Diamante), 814 F.2d 61, 70 (1st Cir. 1987); accord In re Maury Santiago, 533 F.2d 727, 730 (1st Cir. 1976)("Calling a grand jury for the 'sole or dominating' reason of gathering information to be used at trial of a pending indictment is abuse"); *see generally*, Sara Sun Beale & William C. Bryson, 2 *Grand Jury Law and Practice*, §9.16 at 9-71-9.72.2 (1999)(collecting cases on the "sole and dominant purpose" test).   The government may, however, use at trial any evidence incidentally gained from a grand jury investigation whose primary purpose is to determine whether a particular crime has been committed.  Diamante, 814 F.2d at 70.

A defendant who asserts that the prosecution abused the grand jury process "shoulder[s] a heavy burden" to prove that the government's primary purpose for proceeding before the grand jury was to collect evidence relating to the pending charges.  Flemmi, 245 F.3d at 28; Leung, 40 F.3d at 581. To meet that burden, a defendant must provide "'particularized proof' of an improper purpose to overcome the presumption of propriety of a grand jury subpoena." United States v. Salameh, 152 F.3d 88, 109 (2nd Cir. 1998), quoting United States v. Mechanik, 475 U.S. 66, 75 (1986). "[A]ccusations of grand jury abuse can be conclusively rebuffed by a showing that the challenged proceedings led to the joinder of new defendants or the inclusion of new charges." Flemmi, 245 F.3d  at 29.

**B.     Defendants Have Not Shown That the Sole or Dominating Purpose of the Post-Indictment Proceedings Was to Prepare the Pending Charges for Trial**

**1.     The Hobbs Act and state law allegations were properly added**

The defendants have asserted that the grand jury process was abused because no new witnesses or evidence was required to add the Hobbs Act charges and because the state law allegations "simply endeavored to bolster the government's pending case." Defendants' Memorandum at 4. These arguments are meritless for a number of reasons.

First, it is beyond dispute that the government may supersede an existing indictment prior to trial to modify its original theory of prosecution or add new charges. See Flemmi, 245 F.3d at 28 ("After all, superseding indictments setting forth new charges or adding new defendants are familiar fare."). See also United States v. Fisher, 871 F.2d 444, 451 n.7 (3rd Cir. 1989); United States v. LaPorta, 46 F.3d 152, 161 (2nd Cir. 1994)("Provided the prosecutor acted with probable cause to believe the defendant committed the crimes with which he is charged in the superseding indictment * * * the prosecutor's decision regarding what charges to bring before the grand jury rested entirely within his discretion."). In many instances, such modifications may strengthen the government's case by, *inter alia*, allowing it to prove an element of the offense through different means than originally required. See e.g., United States v. Schmick, 904 F.2d 936, 940 (5th Cir. 1990)(superseding indictment adds two additional objects and seven additional overt acts to conspiracy charge).

Here, the inclusion of the state law allegations indeed were permissibly added to "bolster" the government's case in light of the Supreme Court's pending decision in Weyhrauch. And the government acted well within its discretion to add the Hobbs Act charges for the same legitimate precautionary reasons and to clarify the theory of prosecution. It is of no moment that most of the

evidence supporting the Hobbs Act charges was already known to the grand jury. See United States v. McLaughlin, 910 F. Supp. 1054, 1063 (E.D. Pa. 1995)(rejecting argument that government's prior knowledge of the evidence later used to support superseding indictment showed that proceedings were used to conduct discovery); United States v. Furrow, 125 F.Supp.2d 1170, 1177 (C.D. Cal. 2000)("[T]he availability of sufficient evidence to charge certain crimes at an earlier point in the process does not cast doubt on propriety of grand jury's investigation. . .").

Second, the defendants offer no reasoned argument how the post-indictment proceedings could justify the dismissal of the Hobbs Act charges, which the above-cited legal principles amply support as a permissible, discretionary, and common justification for a superseding indictment.[4] What is impermissible under the law is using the "fact-finding function" of the grand jury solely or principally to improve the government's case as to the evidence. United States v. Jackson, 863 F. Supp. 1449, 1454 (D. Kan. 1994). By the defendants' own acknowledgment, no witness who testified related to the Hobbs Act allegations. Indeed, with the arguable exception of the emails provided by VCC on July 2, 2009 pursuant to a subpoena issued months before the first indictment, no specific evidence obtained in the post-indictment grand jury proceedings support the superseding indictment.

    **2.    The Genesis allegations are not the product of any abuse of the grand jury**

Defendants posit that the "sole purpose" of the Genesis allegations was "to attempt to

---

[4] The defendants' cite the quote from Flemmi that suggested that if an indictment "merely corrects peripheral details or adds something trivial to the pending indictment, an inquiring court has every right to be skeptical." 245 F.2d at 29. But adding a substantive charge and object of the conspiracy can hardly be called a "trivial" change, and the defendants have made no showing – nor can they – that adding the Hobbs Acts charges are merely pretextual.

strengthen the government's case on the conspiracy and honest services fraud charges contained in the original indictment." Defendants' Memorandum, at 4.[5] Their speculation is incorrect.

Under Flemmi, the issue is "whether the facts, viewed objectively, reveal a proper justification for the government's continued resort to the grand jury." 245 F.3d at 29. As shown above, while the grand jury had heard some evidence relating to Genesis before the return of the original indictment on June 2, 2009, the investigation was not yet completed. Additional incriminating emails were provided by VCC on July 2, 2009, and the government sought to determine if an independent and provable crime surrounding DiMasi's relationship to Genesis could be charged. Ultimately, no new charges were added to the case. However, the allegations, which are otherwise relevant to the charges, are properly contained in the superseding indictment.

The defendants have offered no evidence other than conclusory statements that the sole or dominating purpose of continuing the grand jury was to conduct further discovery related to the existing charges. See United States v. Woods, 544 F.2d 242, 250 (6th Cir. 1976)(defendant offered nothing beyond unproved suspicions to prove witnesses were improperly summoned to grand jury). The government here continued to conduct an investigation surrounding the Genesis matter, bolstered by the email production, to see if an additional scheme, involving GP-1 and GP-2 and other overlapping participants already under indictment, could be charged. The government's "good faith inquiry into other charges [not included in the indictment] . . .is not prohibited even if it uncovers further evidence against an indicted person." United States v. Moss, 756 F.2d 329, 332

---

[5]Presumably, the defendants mean to attack the use of the grand jury post-indictment that resulted in the Genesis allegations because, as noted above, the government would be permitted to add the allegations in a superseding indictment if none of the evidence was a product of post-indictment grand jury proceedings.

(4th Cir. 1985)(citation omitted). And the fact that no new charge emerged cannot be construed to reflect any irregularity in the continued proceeding. See Jackson, 863 F. Supp. At 1455 (rejecting defendants' argument that it is prima facie evidence of an improper motive whenever a superseding indictment is returned that changes an existing count and did not add a new count).

Thus, where the new Genesis evidence was incidentally gained from a continued grand jury investigating the possibility of charging other crimes and defendants,[6] there is no impropriety in its use and certainly no grounds to dismiss the superseding indictment. Diamante, 814 F.2d at 70.

### III.   CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss for grand jury abuse should be denied.

                                        Respectfully submitted,

                                        CARMEN M. ORTIZ
                                        UNITED STATES ATTORNEY

                          By:    */s/ S. Theodore Merritt*
                                        S. THEODORE MERRITT
                                        ANTHONY E. FULLER
December 18, 2009                   Assistant U.S. Attorneys

### CERTIFICATE OF SERVICE

I, S. Theodore Merritt, Assistant United States Attorney, do hereby certify that this document, filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non registered participants on this date.

                                        */s/ S. Theodore Merritt*
                                        S. THEODORE MERRITT

---

[6] As noted, the "new" evidence was simply the emails produced by VCC after the indictment in response to the government's pre-indictment subpoena. Thus, arguably, no new evidence was even gained from the continuing grand jury investigation.

11