IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | |
| v. : | Crim. No. 09-CR-10166-MLW |
| : | |
| **SALVATORE F. DIMASI,** : | |
| **JOSEPH P. LALLY, Jr.,** : | |
| **RICHARD W. McDONOUGH,** : | |
| **and** : | |
| **RICHARD D. VITALE** : | |
| **Defendants** : | |

**SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MOTION OF
DEFENDANT RICHARD D. VITALE TO EXCLUDE EVIDENCE
DENOMINATED BY THE GOVERNMENT AS
"ACTS OF CONCEALMENT AND CONSCIOUSNESS OF GUILT"**

The United States, by and through the undersigned Assistant United States Attorneys, hereby submits this supplemental memorandum in opposition to the Motion of Defendant Richard D. Vitale to Exclude Evidence Denominated by the Government as "Acts of Concealment and Consciousness of Guilt" [Docket No. 297] (the "Motion"). This memorandum is submitted for the limited purpose of clarifying and supplementing the factual and legal basis for the admissibility of the April 24, 2008 voicemail identified in Vitale's Motion. See Docket No. 297, 11.

First, the fact that Vitale left the voicemail three days before the Boston Globe published an article regarding Vitale's efforts on behalf of the Massachusetts Association of Ticket Brokers ("MATB") does not mean that the evidence reflects Vitale's consciousness of guilt only with respect to his involvement with the MATB. On March 10, 2008, the Globe reported that the

Massachusetts Inspector General had determined Cognos was improperly rewarded the performance management software contract. While Vitale's name is not mentioned in that article, phone records reflect multiple calls on March 10 and 11, 2008 between all four of the coconspirators – including Vitale.  In addition, Joseph Lally will testify that he met with Vitale and Richard McDonough after the article appeared in the Globe, and Vitale discussed the $500,000 payment he received from Cognos and how he would deal with those funds.  The evidence supports the inference that Vitale knew it was only a matter of time before his connections to DiMasi and Cognos were uncovered.

Not only is Vitale's argument factually flawed, it is also legally flawed.  Vitale argues that because the Boston Globe was investigating not just Cognos but also Vitale's involvement with the MATB, it is impossible to determine whether his attempt to permanently delete his emails reflected a consciousness of the crimes charged in this case.  Docket No. 297 at 12, citing United States v. Myers, 550 F.2d 1036, 1049-50 (5th Cir. 1977) (evidence of flight after second robbery not admissible to show consciousness of guilt as to first robbery).  To exclude the voicemail on this basis would be to reward Vitale for being involved in more than one nefarious activity.

The First Circuit explicitly rejected this argument in United States v. Boyle, 675 F.2d 430, 432-33 (1st Cir. 1982).  The defendant argued, relying on Myers, that his use of an alias when

checking into a hotel days after the charged robbery was inadmissible because he could have been using an alias in an effort to avoid arrest on outstanding warrants for other robberies.  While not explicitly rejecting Myers, the court upheld the trial judge's admission of the alias evidence, noting:

> Certainly we find little to commend defendant's broad proposal to bar 'alias' evidence whenever a defendant has committed more than one crime.  Under it, the more crimes a person commits using an alias, the less able the prosecutor would be to use the alias as evidence.  Such a rule would ignore the substantial possibility that the defendant is using the alias to evade detection for all of his crimes, including the one charged.

675 F.2d at 432-33.  To exclude the voicemail because Vitale might have been trying to hide his connections with the MATB would likewise ignore the reasonable inference, much less "the substantial possibility," that he was trying to hide all of his crimes, including the ones charged in the indictment.  While Vitale may have alternative explanations for his voicemail at trial, the fact that there are alternative explanations goes to the weight of the evidence, not the admissibility.  United States v. Mount, 896 F.2d 612, 622 (1st Cir. 1990).

Finally, Vitale's claim that he left the voicemail because he was complying with some risk management directive of the firm is belied by the anticipated testimony of Richard Caturano.  Vitale left the voicemail for Caturano on April 24, 2008.  The government expects Caturano will testify that he saw Vitale a few days later and told him that the firm could not permanently delete his emails,

and that Vitale acknowledged that deleting the emails from the server would not be appropriate.  It was not as if Vitale discovered after leaving the voicemail that permanent deletion was *physically* impossible, but rather that he realized the impropriety of asking the firm to permanently delete his emails, many of which constitute evidence of the crimes charged in the indictment.

Accordingly, the Motion should be denied.

```
                              Respectfully submitted,
                              CARMEN M. ORTIZ
                              UNITED STATES ATTORNEY


                         By:  /s/ Kristina E. Barclay
                              S. THEODORE MERRITT
                              ANTHONY E. FULLER
                              KRISTINA E. BARCLAY
Dated: April 20, 2011         Assistant U.S. Attorneys
                              (617) 748-3100
```

### CERTIFICATE OF SERVICE

I, Kristina E. Barclay, Assistant United States Attorney, do hereby certify that this document, filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to those indicated as non registered participants on this date.

```
                              /s/ Kristina E. Barclay
                              KRISTINA E. BARCLAY
```