UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
                          )
           v.             )          Cr. No. 09-10166-MLW
                          )
SALVATORE F. DIMASI and   )
RICHARD W. MCDONOUGH,     )
      Defendants.         )

MEMORANDUM AND ORDER

WOLF, D.J.                                    October 11, 2011

     After a six-week trial, on June 15, 2011, defendants Salvatore

DiMasi and Richard McDonough were convicted of conspiracy to commit

honest services mail fraud, honest services wire fraud, and/or

extortion under color of official right, and of honest services

mail and wire fraud as well. In addition, DiMasi was convicted of

extortion under color of official right. All of the charges

involved payments made in exchange for official acts by DiMasi as

Speaker of the Massachusetts House of Representatives to assist

Cognos ULC obtain funded contracts for computer software with the

Commonwealth of Massachusetts. The essence of all of the charges

was that Joseph Lally, a co-defendant who cooperated and testified

for the government, conspired with DiMasi, McDonough, and Richard

Vitale, who was acquitted, to cause Cognos, and later Lally's

company Montvale Solutions, to make payments in exchange for

official acts by DiMasi as Speaker to benefit Cognos. As explained

in detail in the August 30, 2011 Memorandum and Order denying

DiMasi and McDonough's motions for acquittal or for a new trial,

there was ample, credible evidence to prove that payments for this corrupt purpose were made to DiMasi personally, in the form of purported referral fees, through his unwitting associate in the practice of law, Stephen Topazio, and in the form of kickbacks paid to Vitale and, for the purpose of the charges involving extortion, McDonough.[1]

On September 9, 2011, DiMasi was granted a downward variance from a Guideline sentencing range of 235 to 293 months and was sentenced to serve eight years in prison. McDonough was granted a downward variance from a Guideline sentencing range of 188 to 235 months and was sentenced to serve seven years in prison.

After hearing argument on September 23, 2011, the court denied DiMasi and McDonough's motions for bail pending appeal pursuant to 18 U.S.C. §3143(b). The following is an edited version of the transcript of that ruling and the reasons for it. Some citations have been formalized and others have been added. Some additional information is included in footnote 55.

\* \* \* \* \* \*

I. INTRODUCTION

For the reasons I will describe, the defendants' motions to be released on bail pending appeal are being denied.

I postponed the hearing on these motions, instead of deciding

---

[1]See United States v. DiMasi, No. 09-10166-MLW, 2011 WL 383770 (D. Mass. Aug. 30, 2011) (the "August 30, 2011 Memorandum and Order").

2

them at the time of the sentencing when these matters are usually decided, because I wanted to consider them particularly carefully. I am called upon to decide whether there is a close question concerning whether I made a mistake and, if so, whether any error is going to make a difference on appeal. I wanted to make this decision thoughtfully, with proper recognition of the possibility that I made legal errors in this case. However, the applicable legal standard requires that to grant bail pending appeal I must find that there is a close question that is reasonably likely to result in an acquittal, a new trial, or a lower sentence. I cannot candidly say that I discern such an issue.

II. LEGAL STANDARDS

The answer to the questions presented is very much influenced by the standards that have to be employed in deciding them. The issue of release from detention pending appeal arises under 18 U.S.C. §3143(b).[2] I find the defendants have proven by clear and

---

[2] 18 U.S.C. §3143(b) provides in relevant part:

Release or detention pending appeal by the defendant. -- (1) . . . [T]he judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds –

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

3

convincing evidence that, if released, they are not likely to flee or present a danger to the community.[3] Indeed, the government does not dispute this. Defendants have not, however, shown that their appeal raises a substantial question of law or fact likely to result in reversal, a new trial, or a lower sentence.[4]

I have considered all of the issues raised by the defendants in their series of submissions on this matter. I have reached my decision analyzing all of those issues and employing the standard articulated by the First Circuit in Bayko, and the other relevant

_____

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in -

    (i) reversal,

    (ii) an order for a new trial,

    (iii) a sentence that does not include a term of imprisonment, or

    (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title, except that in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence.

[3]18 U.S.C. §3143(b)(A).

[4]18 U.S.C. §3143(b)(B).

4

standards.[5] Most of the issues have been discussed in previous oral
and/or written decisions by me. I am now going to address only the
issues that were argued on September 23, 2011. Defendants have
characterized these as the issues with the best prospect of
resulting in acquittal, a new trial, or a lower sentence.

The §3143(b) standards were interpreted in Bayko.[6] The First
Circuit held that §3143(b) has "two distinct requirements: '(1)
that the appeal raise a substantial question of law or fact and (2)
that if that substantial question is determined favorably to
defendant on appeal, that decision is likely to result in reversal
or an order for a new trial of all counts on which imprisonment has
been imposed.'"[7]

As to the first requirement, the First Circuit has interpreted
the words "substantial question of law or fact" to mean "a 'close'
question or one that very well could be decided the other way."[8] In
Bayko, the First Circuit described the second requirement as
"mean[ing] that if error is found, it must not be harmless or
unprejudicial error."[9] It also defined the statutory phrase,

---

[5]United States v. Bayko, 774 F.2d 516, 522-23 (1st Cir.
1985).

[6]Id.

[7]Id. at 522 (quoting United States v. Miller, 753 F.2d 19,
23 (3d Cir. 1985)).

[8]Id. at 522 (internal quotation marks omitted).

[9]Id.

5

"likely to result in reversal," as "mean[ing] that 'it is more probable than not that' a favorable decision will result in reversal of the conviction or a new trial."[10]

Another important standard for the purpose of this analysis is the standard for deciding a Rule 29 motion for acquittal at the trial level.[11] The First Circuit will apply the same standard in analyzing the sufficiency of the evidence on appeal.[12] I discussed that standard fully in my August 30, 2011 Memorandum and Order concerning the motions for acquittal or a new trial.[13] Among other things, the First Circuit, on appeal, will "'scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt.'"[14] In doing so, it will not "weigh the evidence or make any credibility judgments."[15]

Like this court in deciding the Rule 29 motion, the First

---

[10]Id.

[11]See Fed. R. Crim. P. 29.

[12]See United States v. Marin, 523 F.3d 24, 27 (1st Cir. 2008).

[13]See DiMasi, 2011 WL 3837770, at *2-3.

[14]United States v. Merlino, 592 F.3d 22, 29 (1st Cir. 2010) (quoting United States v. Olbres, 61 F.3d 967, 970 (1st Cir. 1995)).

[15]Id.

6

Circuit will be called upon to decide if the evidence is sufficient to permit a rational jury to find each essential element to have been proven beyond a reasonable doubt.[16] However, the government does not have to rule out every "'hypotheses . . . congenial to a finding of innocence.'"[17] Moreover, the government is not bound by all of the evidence that it presents. However, if the government introduces evidence contrary to the inferences it wants the jury to draw, it must introduce other direct or circumstantial evidence to relieve itself of the effect flowing from the evidence produced.[18] In addition, the acquittal of one defendant on a particular charge is not relevant to the analysis of whether there was sufficient evidence to prove another defendant guilty of any charge, including the same charge, even if the acquittal and the finding of guilt are logically inconsistent.[19]

Furthermore, when the issue is the alleged insufficiency of the evidence concerning one alleged object of the conspiracy, or

[16]Olbres, 61 F.3d at 970.

[17]United States v. Valle, 72 F.3d 210, 216 (1st Cir. 1995) (quoting United States v. Gifford, 17 F.3d 462, 467 (1st Cir. 1994)).

[18]See DiMasi, 2011 WL 3837770, at *3 (citing Rodgers v. United States, 402 F.2d 830, 833-35 (9th Cir. 1968); United States v. Canessa, 534 F.2d 402, 404 n.* (1st Cir. 1976)).

[19]See United States v. Powell, 469 U.S. 57, 68 (1984); United States v. Rogers, 121 F.3d 12, 16 (1st Cir. 1997); United States v. Bucuvales, 909 F.2d 593, 597-98 (1st Cir. 1990); see also Dimasi, 2011 WL 3837770, at *3 (discussing cases).

7

one theory concerning how corrupt payments were made, relief would not be granted if the defendant was properly convicted on another count or theory.[20] Accordingly, in this case, defendants would not be entitled to relief because of some defect relating to the evidence concerning the alleged conspiracy to commit honest services fraud if the evidence was sufficient to properly prove a conspiracy to commit extortion.[21] Similarly, there would be no relief granted if the evidence of the payments to DiMasi through Topazio alone was sufficient to prove either the conspiracy to commit extortion or to commit honest services fraud. In addition, as the parties know, I instructed the jury that it had to be unanimous with regard to any theory concerning allegedly corrupt payments on which it convicted.[22]

With regard to alleged errors of law and the jury instructions, the First Circuit has held that "[p]reserved claims of instructional error are reviewed under a two-tiered standard: [it] consider[s] de novo whether 'an instruction embodied an error of law,' but '[it] review[s] for abuse of discretion "whether the instructions adequately explained the law or whether they tended to

---

[20]See DiMasi, 2011 WL 3837770, at *11 n.8 (citing Griffin v. United States, 502 U.S. 46, 51, 59-60 (1991); United States v. Capozzi, 486 F.3d 711, 717-18 (1st Cir. 2007)).

[21]See United States v. Mitchell, 85 F.3d 800, 811 (1st Cir. 1996).

[22]See DiMasi, 2011 WL 3837770, at *11 n.8 (citing, inter alia, Richardson v. United States, 526 U.S. 813, 824 (1999)).

8

confuse or mislead the jury on the controlling issues."'"[23] If an error was made in a jury instruction it is generally subject to harmless error review.[24] Omission of an element of the offense is subject to harmless error analysis.[25] Similarly, if the jury was instructed on a multiple object conspiracy, if one of the objects is legally flawed, the defect in the resulting conspiracy conviction is subject to harmless error review.[26] Finally, harmless error review also applies if the court misstated an element of the offense.[27] The harmless error inquiry was described by the Supreme Court in Neder. The issue is, "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?"[28] The appellate court asks "whether the record contains evidence that could rationally lead to a contrary finding with respect to the" instructional error.[29]

    Where the court has refused to give a requested instruction,

---

[23]United States v. Jadlowe, 628 F.3d 1, 14 (1st Cir. 2010) (quoting United States v. Silva, 554 F.3d 13, 21 (1st Cir. 2009)).

    [24]See Hedgpeth v. Pulido, 555 U.S. 57, 60-61 (2008).

    [25]Neder v. United States, 527 U.S. 1, 15 (1999).

    [26]See Skilling v. United States, 130 S. Ct. 2896, 2934 & n.46 (2010) (confirming that harmless error standard announced in Hedgpeth, 555 U.S. at 60-61, applies on direct appeal).

    [27]Pope v. Illinois, 481 U.S. 497, 501-02 (1987); see also Hedgpeth, 555 U.S. at 60-61 (characterizing Pope).

    [28]Neder, 527 U.S. at 18.

    [29]Id. at 19.

9

the First Circuit reviews the decision for abuse of discretion.[30] As stated by the First Circuit in Brandon, "[t]he trial court's failure to give a proffered instruction will not be reversed unless that instruction is (1) substantively correct; (2) was not substantially covered in the charge actually given; and (3) concerned an important point such that the failure to give it seriously undermined the defendant's ability to present a particular defense."[31] Under the third prong, reversal is not required unless the defendant suffered substantial prejudice.[32]

III. DISCUSSION

## A. Sufficiency of the Evidence and Jury Instructions

I find that it is not a close question whether the evidence was sufficient to prove a conspiracy to commit extortion and honest services fraud involving payments through Topazio. The reasons for this are explained in the August 30, 2011 Memorandum and Order.[33] On September 23, 2011, the defendants pointed to some language in Lally's testimony that is compatible with their contention that the payments through Topazio were mere gratuities rather than bribes

---

[30]See United States v. Lewis, 40 F.3d 1325, 1336 (1st Cir. 1994).

[31]United States v. Brandon, 17 F.3d 409, 448 (1st Cir. 1994).

[32]See United States v. De La Cruz, 514 F.3d 121, 139 (1st Cir. 2008) (citing United States v. Tipton, 90 F.3d 861, 883 (4th Cir. 1996)).

[33]See DiMasi, 2011 WL 3837770, at *7-13.

10

paid in exchange for official acts.[34] For example, on May 18, 2011,
Lally testified that he "was hoping" at the outset to get a benefit
from the payments being made to DiMasi through Topazio.[35]

In these circumstances, the government was required to
introduce evidence to refute the evidence suggesting that the
payments were mere gratuities.[36] As described in the August 30, 2011
Memorandum and Order, the government introduced ample evidence to
prove its stream of benefits theory of extortion and honest
services fraud.[37] Essentially, there was sufficient evidence to

---

[34]The Supreme Court distinguished bribes from gratuities in
United States v. Sun-Diamond Growers of California:

> The distinguishing feature of each crime is its
> intent element. Bribery requires intent "to influence"
> an official act or "to be influenced" in an official
> act, while illegal gratuity requires only that the
> gratuity be given or accepted "for or because of" an
> official act. In other words, for bribery there must be
> a quid pro quo - a specific intent to give or receive
> something of value in exchange for an official act. An
> illegal gratuity, on the other hand, may constitute
> merely a reward for some future act that the public
> official will take (and may already have determined to
> take), or for a past act that he has already taken.

526 U.S. 398, 404-05 (1999). In Skilling, the Supreme Court
narrowed the honest services fraud statute, 18 U.S.C. §1346, to
include only bribery and kickback schemes, "draw[ing] content
. . . from federal statutes proscribing -- and defining --
similar crimes." 130 S. Ct. at 2931, 2933.

[35]See May 18, 2011 Tr. at 33, 38.

[36]See DiMasi, 2011 WL 3837770, at *3 (citing Rodgers, 402
F.2d at 833-35; Canessa, 534 F.2d at 404 n.*).

[37]See id. at *7-13.

11

establish that the payments that started in about April, 2005, were in exchange for official acts by DiMasi to be performed when asked or when opportunities arose, and he accepted the payments with that understanding.[38] For example, Lally testified that he wanted to get money to DiMasi to have DiMasi "obtain funding for" Cognos.[39] In addition, several months after the Topazio payments began, Lally told McDonough that he needed funding for the Department of Education project and that it was "time for [the relationship with Topazio] to pay off."[40] There was substantial circumstantial evidence to support this direct evidence of quid pro quo bribery.[41] Accordingly, the Rule 29 motion alleging that there was insufficient evidence concerning extortion and honest services fraud based on payments to DiMasi through Topazio did not present a "close question" as required by Bayko.[42]

There was also ample evidence that DiMasi accepted the

---

[38]See id. (citing, inter alia, United States v. Urciuoli (Urciuoli II), 613 F.3d 11, 14 (1st Cir. 2010); United States v. Ganim, 510 F.3d 134, 137-47 (2d Cir. 2007); United States v. Whitfield, 590 F.3d 325, 336-41 (5th Cir. 2009); United States v. Kincaid-Chauncey, 556 F.3d 923, 937-38 (9th Cir. 2009)).

[39]See May 18, 2011 Tr. at 33-34 (Lally testified that he "funnel[ed] money to the Speaker DiMasi . . . [t]o gain favor with the Speaker, to have him help us close software, cut deals, and obtain funding for us.").

[40]Id. at 40; see also DiMasi, 2011 WL 3837770, at *8.

[41]See DiMasi, 2011 WL 3837770, at *12.

[42]See Bayko, 774 F.2d at 523.

12

payments through Topazio intending to be influenced in his official acts.[43] This, too, is not a close question. DiMasi's actions in 2005 may not themselves have been official acts. For example, his advocating for Cognos to Department of Education Commissioner David Driscoll based on talking points that Lally gave him may not have been an official act. However, the actions that DiMasi took in 2005 illuminate his intent at the time and in performing official acts in 2006.[44] Moreover, the official acts in 2006 are not too attenuated from the 2005 payments to have those payments be found to have been in exchange for official acts. In Whitfield, the Fifth Circuit found that the evidence of honest services fraud was sufficient where some payments were made to a judge before he was elected to the bench, and two years before he performed an official act.[45]

It is also not a close question whether the jury instructions regarding extortion and honest services fraud relating to payments to DiMasi through Topazio were incorrect as a matter of law. As described in the August 30, 2011 Memorandum and Order, the instructions were based on the Supreme Court's decision in

---

[43]See DiMasi, 2011 WL 3837770, at *12.

[44]Id.; see also United States v. Sutton, 970 F.2d 1001, 1008 (1st Cir. 1992) ("[I]t is an accepted proposition, logically and legally, that subsequent events may shed light upon, and be relevant in determining, what transpired at an earlier time.").

[45]See Whitfield, 590 F.3d at 553 & n.17; see also DiMasi, 2011 WL 3837770, at *12 (discussing Whitfield).

13

Skilling,[46] the First Circuit's post-Skilling decision in Urciuoli II,[47] and on cases cited by the Supreme Court and the First Circuit, particularly Ganim,[48] Kemp,[49] Whitfield,[50] and Kincaid-Chauncey.[51] Further support for the instructions I gave comes from the August 25, 2011 decision of the Third Circuit in Bryant.[52] There, the Third Circuit validated the stream of benefits theory of honest services fraud, and held that payments need not be shown to have been made with the intent to "alter" official conduct.[53] The Third Circuit also held that quid pro quo bribery agreements can be implicit; they do not need to be explicit.[54]

I also find that it is not a close question whether I improperly or inadequately failed to distinguish legal gratuities from illegal bribes in instructing the jury as those concepts related to the Topazio payments, as well as other payments. I did

---

[46]Skilling, 130 S. Ct. at 2930-31, 2934.

[47]Urciuoli II, 613 F.3d at 14-18.

[48]Ganim, 510 F.3d at 147-49.

[49]United States v. Kemp, 500 F.3d 257, 281-86 (3d Cir. 2007).

[50]Whitfield, 590 F.3d at 352-53.

[51]Kincaid-Chauncey, 556 F.3d at 943-47.

[52]United States v. Bryant, Nos. 09-3243, 09-3275, 2011 WL 3715811, at *4-5, *7-9 (3d Cir. Aug. 25, 2011).

[53]Id. at *5-6, *7-9.

[54]Id. at *5, *8.

14

instruct the jury that it had to be proven that payments were intended to be, and were known by the defendants to be, made in exchange for official acts.[55] In addition, my instructions included

---

[55]A transcript of the jury instructions was prepared and marked for identification as Exhibit II. When the full transcript of the proceedings on June 13, 2011, is prepared, the page numbers may differ from the version cited in this Memorandum and Order.

Among other things, the jury was given the following instructions emphasizing the necessity of proof that payments were made in exchange for official acts.

> [T]o find a defendant guilty of committing the crime of mail or wire fraud, you must find that he devised or participated in a scheme to exchange one or more such payments for the performance by DiMasi of one or more official acts.

See June 13, 2011 Tr. Excerpt at 40.

> A payment made in exchange for an official act, which is sometimes called a quid pro quo bribe or kickback, is a payment made with the intent to influence an official act and received with the intent to be influenced in an official act.

Id. at 41.

> In order to convict a defendant of honest services fraud, you must unanimously agree that the defendant participated in a scheme involving payments to DiMasi through Topazio in exchange for official acts, or involving payments to Vitale in exchange for official acts, or involving both types of payments. You must all agree that the defendant participated in a scheme involving one type of payment, or the other, or both.

Id. at 46.

> Accordingly, you should decide whether the government has proven that DiMasi was receiving payments from Cognos or Lally that he knew were made in exchange for his official acts or knew that Vitale was receiving

15

the following statements that in effect distinguished a mere

gratuity from a bribe:

> [I]t would not be enough if the government only proves
> that Cognos and/or Lally made a payment to DiMasi or
> Vitale only to cultivate a business or political
> relationship with DiMasi or only to express gratitude for
> something DiMasi had done.[56]

As the parties know from the documents I circulated while drafting

the jury instructions,[57] this statement was based on Sawyer I,[58] and

Sun-Diamond.[59] I went on to say:

> In addition, any payment to Vitale only to lobby public
> officials, meaning to advocate positions to public
> officials or to provide strategic advice to clients
> seeking public contracts or for business advice, is not
> a basis for a mail or wire fraud charge.[60]

Later in the instructions, with regard to the intent element, I

told the jury:

> In addition, in this case it would not be enough if the
> government proves only that a defendant genuinely
> believed that Cognos and/or Lally made the payments at
> issue only to cultivate a business or political
> relationship with DiMasi or to express gratitude for

---

payments DiMasi had caused to be made from Cognos or
Lally for his benefit in return for his official acts.

Id. at 47.

[56] Id. at 42.

[57] See, e.g., June 12, 2011 Order.

[58] United States v. Sawyer (Sawyer I), 85 F.3d 713, 720-22
(1st Cir. 1996).

[59] Sun-Diamond Growers of Cal., 526 U.S. at 404-05.

[60] See June 13, 2011 Tr. Excerpt at 42.

16

something DiMasi had done.[61]

These instructions distinguished a quid pro quo bribe or kickback
from a gratuity.[62] I also instructed that a quid pro quo bribe or
kickback was a payment made with intent to influence an official
act, and accepted with intent to be influenced.[63]

The foregoing issues concerning the instructions do not
present a close question as required by Bayko. When the
instructions are read as a whole -- or even when they are read in
their pertinent parts alone -- they did not improperly shift the
burden of proof to the defendants.[64] Among other things, at the
conclusion of the instructions on intent I said:

[I]n this case it would not be enough if the government
proves only that a defendant genuinely believed that
Cognos and/or Lally made the payments at issue only to
cultivate a business or political relationship with
DiMasi or to express gratitude for something DiMasi had
done. In other words, if the defendant knew of any of the
payments at issue and had a sincere good faith belief
that they were being made only for one or more than one
of these legitimate purposes, he would not be guilty of
mail or wire fraud even if that belief was erroneous.[65]

Then, addressing the burden of proof, I said:

A defendant does not have the burden to establish his

---

[61] Id. at 50.

[62] See Sun-Diamond Growers of Cal., 526 U.S. at 404-05.

[63] See June 13, 2011 Tr. Excerpt at 41.

[64] See United States v. Gerhard, 615 F.3d 7, 29 (1st Cir.
2010).

[65] See June 13, 2011 Tr. Excerpt at 50.

17

good faith. The burden to prove both intent to defraud and to deceive the public and therefore lack of good faith as well as all of the other elements of the crimes charged rests with the government to prove beyond a reasonable doubt.[66]

In addition, throughout the instructions I told the jury that the burden of proof at all times was on the government to prove the matters at issue beyond a reasonable doubt.

Particularly if the payments to Vitale are counted, I probably told the jury more about what was legal, as compared to illegal, than was actually required by First Circuit precedent. In Potter, the judge refused to instruct the jury on what would be legal, rather than illegal, in an honest services fraud case.[67] The First Circuit said that the risk of the jury confusing a distasteful gratuity for an illegal bribe did not exist in Potter as it had in Sawyer I.[68] It noted that a "scheme . . . aimed at providing millions of dollars in which [the public official] would share" could not rationally be viewed as a way to "cultivate friendship."[69] The same is true with regard to the payments totaling $600,000 to Vitale at a minimum. Even if one assumed, as I do not, that the

---

[66]Id. at 50-51.

[67]See United States v. Potter, 463 F.3d 9, 18-19 (1st Cir. 2006).

[68]Id. at 19 (describing Sawyer I, 85 F.3d at 727-32, 741, as involving gifts such as tickets, trips, and meals, and thereby requiring an instruction that cultivating friendship by means of gifts was not honest services fraud).

[69]Id.

18

payments to Vitale cannot be properly included in the analysis,[70] the required close question does not exist. The $65,000 received by DiMasi personally could not be confused with a mere gratuity.

I did not give the instructions contrasting what would be a gratuity with what would constitute a bribe in as much detail as the defendants requested. However, I did convey the defendants' theory of the case and permitted the defendants to argue it. This is all that was required by DeStefano,[71] and Urciuoli II.[72] It is not, I find, a close question whether my instructions distinguishing lawful conduct from unlawful conduct were correct. I do not find that the First Circuit is likely to find that I abused my discretion in not giving a more elaborate instruction distinguishing a bribe from a gratuity. The defendants' ability to present their defense was not seriously undermined. Therefore, the requirements of Brandon, I predict, will not be found to have been

---

[70]See DiMasi, 2011 WL 3837770, at *2 n.1, *13-17 (finding that, although acquitted, Vitale joined the scheme and conspiracy, and, therefore, that the payments to him need not be excluded from the analysis of the evidence for purposes of defendants' motions for a new trial pursuant to Federal Rule of Criminal Procedure 33).

[71]See United States v. DeStefano, 59 F.3d 1, 2-3 (1st Cir. 1995) ("[S]o long as the charge sufficiently conveys the defendant's theory, it need not parrot the exact language the defendant prefers.").

[72]See Urciuoli II, 613 F.3d at 14-15 (defendant was free to argue to the jury that he performed some legitimate services in exchange for payments alleged to be have been bribes).

19

met.[73]

The defendants make another, separate claim concerning the
sufficiency of the evidence. They assert that the evidence was
insufficient to prove that DiMasi "caused" the payments to
McDonough and Vitale in exchange for official acts, as alleged in
Paragraph 14 of the Amended Superseding Indictment.[74] I find this,
too, is not a close question. However, it is also not material in
view of the fact that the convictions based on the payments to
DiMasi through Topazio would stand in any event, and result in the
same sentence.[75] Put differently, even if an error was made, it
would not result in an acquittal, a new trial, or a lower sentence.

---

[73]See Brandon, 17 F.3d at 448.

[74]Paragraph 14 of the Amended Superseding Indictment
provides in full:

> It was a further object of the conspiracy for DIMASI to
> receive, and cause others to receive, money from LALLY
> and Cognos in return for performing official acts as a
> member and Speaker of the Massachusetts House of
> Representatives that would further the interests of
> LALLY and Cognos in the Commonwealth of Massachusetts.

As discussed in the August 30, 2011 Memorandum and Order, the
court instructed the jury that the payments to McDonough could
not be considered for purposes of honest services fraud because
there was not enough evidence that DiMasi benefitted from those
payments, although the payments to McDonough could be considered
for purposes of extortion. See DiMasi, 2011 WL 3837770, at *5
n.3. Accordingly, although the sufficiency of the evidence
concerning whether DiMasi "caused" the payments to McDonough and
Vitale relates to both the honest services fraud and extortion
charges, the payments to McDonough are relevant only for the
extortion charges.

[75]See Griffin, 502 U.S. at 59-60.

20

It is not claimed that I made any legal error in defining "causation." This case is, therefore, distinguishable from the recent Second Circuit decision in Ferguson, cited by defendants.[76] In this case, Paragraph 14 of the Amended Superseding Indictment alleged that DiMasi "caused" payments to be made to others. In Ferguson, the judge defined "willfully caused" incorrectly and, as the Second Circuit wrote, "the jury was not invited or permitted to rely on the phrase's plain meaning."[77] In this case, on June 9, 2011, Martin Weinberg, then serving counsel for Vitale and making arguments in which all three defendants joined, asked me not to define "cause" for the jury. He argued successfully that "the jury knows what 'cause' is." The defendants did not object to the instruction concerning causation after the jury was instructed.[78]

The evidence was adequate to prove that DiMasi caused payments to be made to Vitale and McDonough. I did not address this issue expressly in the August 30, 2011 Memorandum and Order, but much of the relevant evidence is recited there.[79] I will mention only some of the most significant evidence that, viewed in the light most favorable to the verdict, indicates strongly that the jury could

---

[76]United States v. Ferguson, 2011 WL 3251464, at *8-9 (2d Cir. Aug. 1, 2011).

[77]Id. at *9.

[78]See June 13, 2011 Tr. Excerpt.

[79]See DiMasi, 2011 WL 3837770, at *7-13.

21

properly find that DiMasi caused the payments, and, indeed, that this is not a close question. For example, with regard to the first payments of $100,000 each to McDonough and Vitale, Lally testified that he agreed to make the payments because "[t]hat's what I was told [by McDonough] I needed to do in order to get the Speaker to get the deals -- the funding through."[80] Similarly, Lally testified that he paid Vitale $100,000 because, "I was told that's what I needed to do in order to get the deal and the funding through the Speaker."[81]

It is now argued that those statements were sufficient to show that McDonough said these things and himself caused the payments to be made, but that they are insufficient to prove that DiMasi caused the payments to be made. As summarized in part in the August 30, 2011 Memorandum and Order, there was substantial evidence to prove that McDonough was conspiring with DiMasi and acting as his representative on many occasions in the scheme the jury found proven. There is also other evidence that links DiMasi to the contention that he caused the payments to be made to Vitale. For example, when Lally delivered the first $100,000 check to Vitale, he called DiMasi up and told him that he had dropped off the check. Lally testified that DiMasi responded, "All right. Thank you."[82]

---

[80] See May 18, 2011 Tr. at 63.

[81] Id. at 78.

[82] Id. at 80.

DiMasi did not say, "I don't know what you're talking about." In addition, that payment to Vitale was arranged in May, 2006, and approximately one month later, on the golf course on Father's Day, DiMasi told McDonough and Lally that they had to "make as much hay as possible" during the limited time that he would be Speaker.[83] This is evidence that DiMasi both knew about and caused the payments to McDonough and Vitale.

Moreover, if there was an error with regard to the allegation that DiMasi caused the payments to Vitale and McDonough, it was harmless under Griffin and Skilling.[84] Paragraph 14 of the Amended Superseding Indictment did not allege or require proof that DiMasi caused the payments that he personally received through Topazio. As described in the August 30, 2011 Memorandum and Order, and again as discussed earlier, there was ample evidence to convict DiMasi and McDonough based on the payments to DiMasi through Topazio alone. It is also clear beyond a reasonable doubt that the jury would have found DiMasi and McDonough guilty of conspiracy to commit extortion and honest services fraud without any payments to Vitale or McDonough. Indeed, the defendants argued for the purpose of calculating the Guideline range at sentencing that this is exactly what the jury verdicts indicate it found had occurred. As in

[83]Id. at 70.

[84]See Griffin, 502 U.S. at 59-60; Skilling, 130 S. Ct. at 2934 & n.46.

23

<u>Skilling</u> on remand, there was in this case overwhelming evidence that the payments to DiMasi through Topazio were part of a conspiracy to commit extortion and honest services fraud.[85] The First Circuit's decision in <u>Escobar-de Jesus</u> reinforces this conclusion.[86]

I also find that it is not a close question whether a conviction for Hobbs Act extortion requires a benefit to the public official personally, as defendants argue. <u>Green</u>,[87] <u>Vigil</u>,[88] <u>Margiotta</u>,[89] and <u>Bradley</u>,[90] indicate that the Supreme Court does not require that the benefit be to the public official personally. However, although it may have been more than the law required, as I have explained on other occasions, because the government included a benefit element in its proposed jury instructions for honest services fraud almost until the end of trial, I instructed the jury that it had to find that any payments to others were for

---

[85]<u>See</u> <u>United States v. Skilling</u>, 638 F.3d 480, 488-89 (5th Cir. 2011).

[86]<u>See</u> <u>United States v. Escobar-de Jesus</u>, 187 F.3d 148, 161-62 (1st Cir. 1999).

[87]<u>United States v. Green</u>, 350 U.S. 415, 420 (1956).

[88]<u>United States v. Vigil</u>, 523 F.3d 1258, 1264 (10th Cir. 2008).

[89]<u>United States v. Margiotta</u>, 688 F.2d 108, 113-14 (2d Cir. 1982).

[90]<u>United States v. Bradley</u>, 173 F.3d 225, 231-32 (3d Cir. 1999).

24

DiMasi's benefit in order to convict on the honest services fraud charges.[91] The convictions on the honest services fraud counts communicate that the jury also would have found payments for DiMasi's benefit if I had instructed it that such a benefit was required to convict him of extortion.

On September 23, 2011, DiMasi reiterated his contention that the standard that the Supreme Court applied in McCormick, which requires an explicit quid pro quo agreement when campaign contributions are involved, applies to this case.[92] I first rejected that argument when I orally denied the motion to dismiss the Superseding Indictment in January, 2011. I reiterated my reasoning at the time of the jury instructions. I believe that DiMasi's contention was rejected by the First Circuit in Urciuoli II, in which the court stated that conspiracies to commit honest services fraud can be inferred from circumstantial evidence.[93] In addition, there is a recent, thoughtful decision from the District of Columbia District Court that rejects the argument that the McCormick standard should be employed outside the context of campaign contributions.[94]

---

[91]See DiMasi, 2011 WL 3837770, at *5 n.3.

[92]See McCormick v. United States, 500 U.S. 257, 273 (1991).

[93]See Urciuoli II, 613 F.3d at 14-15 & n.3 (citing Kincaid-Chauncey, 556 F.3d at 943-47; Kemp, 500 F.3d at 284-85).

[94]See United States v. Ring, 768 F. Supp. 2d 302, 306 (D.D.C. 2011) (citing Urciuoli II, 613 F.3d at 13, 15 n.3).

25

## B. Prosecutor's Rebuttal Argument

I have not previously addressed the defendants' claim that improper remarks by the prosecutor in the rebuttal at the end of a long day of closing arguments raise a close question as to whether a new trial is justified.[95] Such claims are analyzed by the First Circuit for harmless error, as explained in Glover.[96] "When determining whether comments are 'harmful,' [the First Circuit] consider[s] the 'totality of the circumstances,' including the severity of the misconduct, the prosecutor's purpose in making the statement (i.e., whether the statement was willful or inadvertent), the weight of the evidence supporting the verdict, jury instructions, and curative instructions."[97] Similarly, in Gentles, the First Circuit held that to determine prejudice, "First, we determine whether the prosecutor's conduct was isolated and/or deliberate; next, we consider whether the trial court gave a strong and explicit cautionary instruction; and finally we determine

[95]A final transcript of the prosecutor's rebuttal argument has not yet been completed. However, a draft transcript of the prosecutor's rebuttal argument was prepared in advance of the September 23, 2011 hearing on the motions for bail pending appeal. See Sept. 6, 2011 Order. Accordingly, for purposes of this Memorandum and Order, the court is quoting and citing page numbers from the draft June 10, 2011 Transcript Excerpt, which may differ from the page numbers of the final transcript when it is prepared.

[96]See United States v. Glover, 558 F.3d 71, 76-78 (1st Cir. 2009).

[97]Id. at 78.

whether it is likely that any prejudice surviving the instruction could have affected the outcome of the case."[98]

Rebuttal is a particularly sensitive time because rebuttal arguments are the last words spoken to the jury by the trial attorneys.[99] However, "[a] specific curative instruction can mitigate the damage of an improper comment, and the content of the jury instructions can remedy the effects of problematic language employed in the closing argument."[100] Such instructions are particularly effective when they explicitly direct the jury to disregard the improper comments.[101]

In this case, one of the prosecutors said in rebuttal that:

[I]f you think the government is in some conspiracy with Joseph Lally to convict these men? Well, then we have another problem.[102]

That comment was provoked by some of the defendants' preceding closing arguments. It is not clear to me what this comment means. Because it is so ambiguous, I do not find that it was improper. However, I did promptly tell the jury to ignore the comment and to

---

[98]United States v. Gentles, 619 F.3d 75, 81-82 (1st Cir. 2010) (internal quotation marks omitted).

[99]See United States v. Ayala-Garcia, 574 F.3d 5, 20 (1st Cir. 2009) (quoting United States v. Manning, 23 F.3d 570, 575 (1st Cir. 1994)).

[100]Glover, 558 F.3d at 78 (internal citation omitted).

[101]See Potter, 463 F.3d at 23-25.

[102]See June 10, 2011 Tr. Excerpt at 101.

27

consider only the conspiracy charged in the indictment.[103] Accordingly, in view of the jurisprudence, it does not present a close question. Any possible prejudice relating to that comment was eliminated by my instruction, and that comment could not have affected the outcome of the case.[104]

In his rebuttal argument, the prosecutor also said:

> You heard some evidence in this case about family and I think Joe Lally's family and I'm sure you haven't been able to disregard the fact that the defendants have families and supporters, but the only family that matters is your family. And when you go back to them, at the end of this case, you can look them in the eye and say, "I decided this case on the evidence," and that's all. When you go back in that jury room, leave your biases, leave your sympathies outside the door, but don't leave behind your common sense. And if you believe that the evidence has proven these defendants guilty beyond a reasonable doubt but you say, "Well, it looks like they have a nice family," or maybe more cynically, "Hey, this is just politics and lobbying as usual," well then the judge and the lawyers, myself included, we have failed to find an impartial jury that will reach a verdict only on the evidence. And I know that's not the case.[105]

I addressed these comments promptly after the defendants' objection. I told the jury:

> [W]hen I give you my instructions on Monday, I am going to explain to you in detail that honest services mail fraud or honest services wire fraud or conspiracies to commit either of those crimes require, among other things, payments made in exchange for official acts, and that's unlawful. And I'm also going to - although I may not use the precise word, describe for you what kind of

[103]See id. at 119-20.

[104]See Gentles, 619 F.3d at 81-82.

[105]See June 10, 2011 Tr. Excerpt at 110.

activity relating to legislators is permissible lobbying
for the purposes of this case. So it's not really a
question of, you know, what's "business as usual" or what
isn't "business as usual." This is why I continue to
urge you, now with even more emphasis, to keep an open
mind until you hear my instructions on Monday because
until you hear my instructions on Monday because until
you know what the questions are, you can't properly begin
to think and then discuss what the right answers are.[106]

Then I told the jury to ignore what the prosecutor had said about

the government being in a conspiracy with Lally, and went on to

say:

You're going to decide this case - you've taken an oath
to decide this case based on the evidence. You're to put
aside any possible bias, sympathy or prejudice and you
are going to decide, based on the evidence, whether any,
some or all of the defendants have been proven guilty
beyond a reasonable doubt. And I'm going to instruct you
to not consider the possible consequences if you do that.

And I'll also tell you now that you're never going to be
under any obligation to explain your verdict to anyone,
your family, or anybody else, and you shouldn't consider
and certainly not be influenced by any consideration of
how your verdict would be received one way or the other.
You have an important responsibility but it's defined, it
is to consider the evidence and decide whether it proves
any charge against any defendant beyond a reasonable
doubt.[107]

For purposes of the present analysis, I assume that the

comments about the jurors facing their families, or finding that

the case concerned politics and lobbying as usual, were improper,

or at least that it is a close question as to whether they were

---

[106]See id. at 119.

[107]See id. at 120-21.

29

improper under cases such as Robinson[108] and Young.[109] However, as defendants' counsel acknowledged on September 23, 2011, the improper comments were not intentional. In addition, I find that they were not severe. And most importantly, I promptly gave a strong curative instruction. In view of the powerful evidence against the defendants, I am confident that they were not prejudiced by the disputed statements made in rebuttal. Indeed, these facts are less serious than those presented in Potter, where the First Circuit found no reversible error.[110]

C. Defendants' Request for Grand Jury Instructions

Finally, the other matter mentioned in the argument on September 23, 2011 related to the grand jury instructions. Essentially, defendants argue that I made an error in not ordering the production of the grand jury instructions or at least reviewing them myself. The contention is that the grand jury may have been instructed only on honest services fraud based on the gratuity or undisclosed conflict of interest theories which were rejected in Skilling, which was decided after the indictment in this case.[111] However, I note that Paragraph 14 of the Amended Superseding

_____

[108]See United States v. Robinson, 473 F.3d 387, 397 (1st Cir. 2007).

[109]See United States v. Young, 470 U.S. 1, 5-6, (1985).

[110]See Potter, 463 F.3d at 23-25.

[111]See Skilling, 130 S. Ct. at 2931, 2933.

30

Indictment alleges, among other things, that "[i]t was a further object of the conspiracy for DIMASI to receive . . . money from LALLY and Cognos in return for performing official acts." That communicates to me that the grand jury found probable cause to believe that DiMasi received money from Lally and Cognos in return for performing official acts, which is in the heartland of quid pro quo bribery and honest services fraud after Skilling.[112] The indictment, therefore, is valid on its face. As the First Circuit said in Maceo, "'[a]n indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits.'"[113] That is what we had in this case. The defendants have now been convicted of quid pro quo honest services fraud. That I believe, under Mechanik, should essentially end the inquiry.[114]

Again, I note that even if the grand jury was not properly instructed on honest services fraud, the extortion charges would remain valid and any error concerning the instructions on honest services fraud would be harmless.

IV. CONCLUSION

Defense counsel have brilliantly presented their arguments.

---

[112]See id.

[113]United States v. Maceo, 873 F.2d 1, 2-3 (1st Cir. 1989) (quoting Costello v. United States, 350 U.S. 359, 363 (1956)).

[114]See United States v. Mechanik, 475 U.S. 66, 67 (1986); see also United States v. Lopez-Lopez, 282 F.3d 1, 9 (1st Cir. 2002).

31

The government has fully responded to them. I have done my best to analyze the issues. I just do not find a close question that is likely to result in reversal, acquittal, a new trial, or a lower sentence. As explained earlier, if defendants were only convicted of conspiracy to extort money paid to DiMasi through Topazio, I would have given exactly the same sentence.

Accordingly, as previously ordered on September 23, 2011, defendants' motions for bail pending appeal are hereby DENIED.

UNITED STATES DISTRICT JUDGE