UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) Cr. No. 09-10166-MLW |
| SALVATORE DIMASI, | ) |
| Defendant. | ) |

MEMORANDUM AND ORDER

WOLF, D.J.                                              March 31, 2017

I.   SUMMARY

As authorized by the November 17, 2016 Memorandum and Order, (the "November 17, 2016 Order"), defendant Salvatore DiMasi has moved that the terms of his Supervised Release be revised to replace the at least six months of home confinement with a 7:00 p.m. to 7:00 a.m. curfew (the "Motion"). For the reasons described below, the Motion is being denied without prejudice.

However, the court is authorizing the Probation Department ("Probation") to allow DiMasi to participate in a cardiac rehabilitation program prescribed by his cardiologist and, if deemed appropriate for him by Probation, the YMCA "Live Strong" program. In addition, the previous authorization for DiMasi to exercise one hour a day is being increased to up to two hours a day to the extent approved by Probation. In the future, DiMasi shall first address any additional requests to participate in programs, or similar requests, to Probation rather than initially

to the court. Probation will grant reasonable requests in the future as it has in the past.

II.  THE RELEVANT HISTORY

The following background is more fully described in the November 17, 2016 Order. See United States v. DiMasi, 2016 WL 6818346 (D. Mass. Nov. 17, 2016).

In 2011, the court sentenced DiMasi to serve eight years in prison for extortion and related crimes committed while he was the Speaker of the Massachusetts House of Representatives. DiMasi began serving that sentence in November 2011.

It was discovered in 2012 that DiMasi had cancer in his neck and tongue. He was treated with chemotherapy and radiation. This treatment resulted in DiMasi needing to receive nourishment through a feeding tube for about a year. DiMasi has been free of cancer since at least July 2013.

Beginning in 2015, DiMasi and his attorneys made a series of requests that the Bureau of Prisons (the "BOP") file a motion with the court seeking DiMasi's early release pursuant to 28 U.S.C. §3582(c)(1)(A)(i). That statute authorizes a court, upon motion by the BOP, to reduce a sentence for "extraordinary and compelling reasons." DiMasi's requests were repeatedly denied by the BOP. Most recently, in June 2016, the Assistant Director and General Counsel of the BOP denied DiMasi's request for such a motion. She noted that his cancers were in remission, and that he had no

physical or work limitations. She concluded that DiMasi did not meet the criteria for a motion for a reduction in sentence because his health was not deteriorating and his ability to function in a correctional institution was not substantially impaired.

However, in July 2016, four lawyers representing DiMasi <u>pro bono</u> met with the United States Attorney for the District of Massachusetts. The United States Attorney subsequently spoke to the General Counsel of the BOP who had recently denied DiMasi's request to encourage reconsideration of that decision.

In August 2016, a medical test was done to evaluate DiMasi's ability to swallow. A BOP doctor interpreted the results as indicating that: DiMasi's throat had narrowed; he had great difficulty swallowing; and his condition was serious, deteriorating, and unlikely to improve. The Medical Director of the BOP subsequently concluded that "it is medically indicated that someone be present to assist [DiMasi] with choking prevention while eating or drinking." <u>Id.</u> at *3. The BOP could have assigned an inmate companion to monitor DiMasi while he was eating or drinking. It chose instead to file a motion for his early release.

For the reasons fully explained in the November 17, 2016 Order, the court allowed that motion. It explained, in part, that:

> Although now cancer free, DiMasi is suffering from a serious medical condition. The treatment for his cancer has narrowed his throat, requiring a special diet. He is, however, still at risk of choking whenever he eats. As previously noted, the Medical Director of the Bureau of Prisons found that "it is

3

medically indicated" that DiMasi be monitored while eating. <u>This opinion is central to the court's conclusion that DiMasi's release is justified</u>. The Bureau of Prisons could provide an inmate companion to monitor DiMasi when he eats. However, the court finds that it would be more effective for his family, and professionals it may hire, to perform this function.

<u>Id.</u> at *4 (emphasis added).

The court found, however, that the reduction of DiMasi's sentence was justified only if certain new conditions of Supervised Release were imposed. More specifically, the court modified the conditions of DiMasi's Supervised Release:

> to include at least six months home confinement,[1] in the custody of his wife Deborah DiMasi, who is being ordered to assure that a family member or professional health aide is with DiMasi whenever he eats or drinks to minimize the risk of choking or other harm to DiMasi. DiMasi will be allowed to leave his home for any medical emergency and, with the prior approval of the Probation Office, for medical appointments, and religious observances. The court is not ordering electronic monitoring of DiMasi's home confinement.

<u>Id.</u> at *24.

In ordering early release, the court stated that DiMasi could after 90 days move for a modification of the home confinement condition of his Supervised Release if there was medical evidence to support such a request. <u>Id.</u> at *25. The court noted it would

---

[1] The six-month period of home confinement served the interest of providing DiMasi the most effective medical care and also the interest of avoiding unwarranted disparities in sentencing. <u>See</u> <u>DiMasi</u>, 2016 WL 6818346, at *24-25. Ordinarily, the BOP requires a six-month placement in a Residential Re-entry Center before an inmate is released to the community. <u>Id.</u> at *25. In view of DiMasi's medical needs, a six-month period of home confinement was deemed more appropriate in this case. <u>Id.</u>

4

consider reducing DiMasi's 24-hour home confinement to a curfew. Id. at *1, 25. The court further stated that it "may also consider whether DiMasi's period of home confinement should be extended beyond six months." Id. at *25.

III. THE MOTION

As indicated earlier, DiMasi has filed a motion requesting that he now be subject to a 7:00 p.m. to 7:00 a.m. curfew rather than continued home confinement.

The motion is supported by a letter from DiMasi's oncologist, who reports that DiMasi is not receiving "active cancer treatment;" has been gaining weight; and "his swallowing capacity has shown improvement." Docket No. 925-1. The doctor indicates that a curfew rather than home confinement would facilitate making and, when necessary, rescheduling appointments. The oncologist does not address the need for monitoring while DiMasi is eating or drinking on which the BOP based its request for DiMasi's early release and on which the court relied in granting it. DiMasi's cardiologist recommends that DiMasi participate in a cardiac rehabilitation program. DiMasi himself states that he would like to participate in the YMCA's twice a week "Live Strong" program for cancer patients, and to exercise for more than the one hour a day previously requested and authorized by Probation after consulting the court.

5

As indicated earlier, the Motion is being denied without prejudice. In essence, the court finds that it is not necessary or appropriate to end DiMasi's home confinement to serve the medical needs identified by his doctors; DiMasi does not meaningfully, let alone persuasively, address why the need for monitoring while he eats or drinks, which he successfully argued justified his early release, either no longer exists or would be adequately met by a curfew; and the imperfect performance of DiMasi and his monitors since his release indicates that at least the current conditions of Supervised Release continue to be necessary and appropriate.

The modified conditions of Supervised Release imposed when DiMasi's early release was ordered were intended in meaningful measure to provide him the opportunity to get optimal medical care from the doctors of his choice. See DiMasi, 2016 WL 6818346, at *19. DiMasi has been receiving such care. As DiMasi should know from experience, if he had asked Probation for permission to participate in a cardiac rehabilitation program prescribed by his doctor, or any other program that reasonably promised to be helpful to his health, Probation--either itself or after consultation with the court--would have authorized it.

In requesting a curfew in place of home confinement without discussing the requirement that he be monitored while eating or drinking, DiMasi implicitly suggests that requirement should be

removed.[2] This is, essentially, a reiteration of the argument DiMasi made unsuccessfully in connection with the motion for his early release. As the court wrote in November 2016:

> it is difficult to reconcile DiMasi's claim that his early release is justified because it is medically indicated that he be monitored while eating with his argument that no time in home confinement is appropriate to assure such monitoring is properly provided. These contradictory positions caused, and to some extent continue to cause, the court to question whether DiMasi's medical condition warrants his early release.
>
> Viewed most favorably to DiMasi, his argument is that he and his family understand the medical need for monitoring while he eats and that they will voluntarily assure he receives it when he returns home. However, the court is not persuaded that the necessary monitoring would be consistently provided if not required as a condition of DiMasi's Supervised Release.
>
> Therefore, the court finds that, at least for a transitional period, it is reasonably necessary to assure the most effective care for DiMasi that it order that he be monitored at home, while eating and drinking, by a member of his family or a healthcare professional hired to do so.

<u>Id.</u> at *24.

The concerns the court expressed in November 2016 endure. On December 15, 2016, DiMasi was not at home when his Probation Officer made an unannounced visit at 3:45 p.m. Although DiMasi had been authorized to go to the bank in conjunction with a 12:30 p.m. medical appointment, he chose to go with his wife at about 3:00 p.m. instead.

---

[2] The court notes that DiMasi does not address why a curfew in place of home confinement would be compatible with DiMasi being monitored whenever eating or drinking.

7

In addition, on December 15, 2016, at 3:45 p.m., the Probation Officer found that DiMasi's step-son had already written in the log Probation required to be kept that he had watched DiMasi eat dinner later that day. As a result, DiMasi and his monitors have since each been ordered to record in logs, under oath, that a particular person watched DiMasi eat or drink at a particular time on a particular date.

The court has reviewed those logs in connection with its consideration of the Motion and finds they raise questions concerning whether all of the required monitoring is being conducted. For example, the logs show that: on January 9, 2017, DiMasi was monitored eating breakfast at 9:08 a.m. and dinner at 8:31 p.m.; and on January 10, 2017, he was monitored eating lunch at 2:08 p.m. and dinner at 8:24 p.m. In contrast to December 30, 2016, for example, there is no statement that on these dates DiMasi did not eat lunch or breakfast respectively. The missing meals, and the long intervals between recorded meals, raise the question of whether all of DiMasi's meals have been monitored.

DiMasi's oncologist's brief, unverified statement that DiMasi's "swallowing capacity has shown improvement" is not sufficient to persuade the court that the need for monitoring that was successfully argued to be a substantial justification for his early release was never necessary or is no longer necessary. However, if such evidence exists, DiMasi may present it in support

of a motion for reconsideration of this denial of his request that a curfew be imposed in place of home confinement. It may, in any event, be necessary to address these questions if and when the court "consider[s] whether DiMasi's period of home confinement should be extended beyond six months." Id. at *25.

IV.  ORDER

In view of the foregoing, it is hereby ORDERED that:

1.  Defendant's Motion to Modify Terms of Supervised Release (Docket No. 925) is DENIED without prejudice.

2.  Probation may authorize DiMasi to leave his home to participate in a cardiac rehabilitation program prescribed by his cardiologist; to participate in any other program reasonably deemed helpful by a healthcare provider; and to exercise up to two hours a day.

                                               /s/ Mark L. Wolf
UNITED STATES DISTRICT JUDGE