UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Cr. No. 09-10166-MLW |
| | ) |
| SALVATORE F. DIMASI, | ) |
| Defendant. | ) |

MEMORANDUM AND ORDER

WOLF, D.J.                                                May 22, 2017

On November 17, 2016, the court allowed the Director of the Bureau of Prisons' (the "BOP") motion to reduce defendant Salvatore DiMasi's eight-year sentence to the almost five years DiMasi had served (the "Motion"). See United States v. DiMasi, 2016 WL 6818346 (D. Mass. Nov. 17, 2016). The Motion was filed pursuant to 18 U.S.C. §3582(c)(1)(A)(i), which gives the court the authority to reduce a sentence if the Director requests it and the court finds that "extraordinary and compelling reasons warrant such a reduction."

As fully described in the November 17, 2016 Memorandum and Order, the court was informed that, in 2012, while DiMasi was serving his sentence for extortion and related crimes committed while he was the Speaker of the Massachusetts House of Representatives, it was discovered that he had cancer in his neck and tongue. He was treated with chemotherapy and radiation. This treatment resulted in DiMasi needing to receive nourishment

through a feeding tube for about a year. DiMasi had been free of cancer since at least July 2013.

Beginning in 2015, the BOP repeatedly denied DiMasi's requests that a motion to reduce his sentence be filed pursuant to §3582(c)(1)(A)(i). However, after the intervention of the United States Attorney for the District of Massachusetts, the BOP reconsidered the matter.

In August 2016, a medical test was done to evaluate DiMasi's ability to swallow. A BOP doctor interpreted the results as indicating that: DiMasi's throat had narrowed; he had great difficulty swallowing; and his condition was serious, deteriorating, and unlikely to improve. The Medical Director of the BOP subsequently concluded that "it is medically indicated that someone be present to assist [DiMasi] with choking prevention while eating or drinking." Id. at *3. The BOP could have assigned an inmate companion to monitor DiMasi while he was eating or drinking. It chose instead to file the Motion for his early release.

For the reasons fully explained in the November 17, 2016 Order, the court allowed the Motion. It explained, in part, that:

> Although now cancer free, DiMasi is suffering from a serious medical condition. The treatment for his cancer has narrowed his throat, requiring a special diet. He is, however, still at risk of choking whenever he eats. As previously noted, the Medical Director of the Bureau of Prisons found that "it is medically indicated" that DiMasi be monitored while eating. This opinion is

2

central to the court's conclusion that DiMasi's release
is justified. The Bureau of Prisons could provide an
inmate companion to monitor DiMasi when he eats.
However, the court finds that it would be more effective
for his family, and professionals it may hire, to perform
this function.

Id. at *4.

The court also found, however, that the reduction of DiMasi's sentence was justified only if certain new conditions of Supervised Release were imposed. More specifically, the court modified the conditions of DiMasi's Supervised Release "to include at least six months home confinement, in the custody of his wife Deborah DiMasi, who [was] ordered to assure that a family member or professional health aide is with DiMasi whenever he eats or drinks to minimize the risk of choking or other harm to DiMasi." Id. at *24.

In explaining the reasons for the six-month period of home confinement, the court wrote:

> Ordinarily, DiMasi would, like other eligible inmates,
> be subject to such a six-month transition toward the end
> of his sentence. The court finds that the usually
> required placement in a Residential Re-entry Center is
> not appropriate. However, in view of his medical needs,
> it is particularly important that DiMasi serve a six-
> month period of home confinement to facilitate his
> transition to the community, and to develop a record
> concerning his current needs and capacity to function in
> the community, which will inform the court's decision
> concerning what conditions of Supervised Release are
> appropriate after the usual transitional period.

Id. at *25. The court also stated that:

> After the first three months of his home confinement,
> DiMasi may move for a modification of this condition of
> his Supervised Release if there is medical evidence to

3

> support such a request. The court may consider replacing the remaining period of 24-hour home confinement with a curfew. The court may also consider whether DiMasi's period of home confinement should be extended beyond six months.

Id.

After three months, DiMasi requested that his home-confinement be reduced to a curfew. The court denied that request in meaningful measure because:

> DiMasi's oncologist's brief, unverified statement that DiMasi's "swallowing capacity has shown improvement" is not sufficient to persuade the court that the need for monitoring that was successfully argued to be a substantial justification for his early release was never necessary or is no longer necessary. However, if such evidence exists, DiMasi may present it in support of a motion for reconsideration of this denial of his request that a curfew be imposed in place of home confinement. It may, in any event, be necessary to address these questions if and when the court "consider[s] whether DiMasi's period of home confinement should be extended beyond six months." DiMasi, 2016 WL 681364 at *25.

Mar. 31, 2017 Mem. & Order (Docket No. 927) at 8-9.

Unless extended, DiMasi's six-month period of home confinement will end on May 22, 2017. However, unless modified, the independent condition that DiMasi be monitored by a member of his family, or a professional healthcare aide, whenever he eats or drinks will continue.

On May 18, 2017, the Probation Department received a letter from the oncologist at Dana-Farber Cancer Institute who began

caring for DiMasi after his release in November 2016. The letter states, in part, that:

> At initial consultation, [DiMasi] continued to display no evidence of [cancer] but had chronic dysphagia.[1] I recommended a swallow study and swallow therapy with our speech and language pathologist. After several months of treatment, Mr. DiMasi has demonstrated improvement. He is judged to be safe to consume a regular diet and nectar-thick liquids, while adhering to the recommended swallowing techniques. Mr. DiMasi does not require supervision of family members or health professionals while eating. He should continue to implement necessary precautions such as prophylactic cough, a liquid wash/water with solids, and allow additional time to consume meals.

May 17, 2017 letter from Dr. Robert Haddad, Ex. 1 hereto.[2]

---

[1] "Dysphagia" means "difficulty in swallowing." See http://www.webmd.com/digestive-disorders/tc/difficulty-swallowing-dysphagia-overview#1.

[2] In United States v. Kravetz, 706 F.3d 47, 58 (1st Cir. 2013), the First Circuit held that letters submitted to the court that are intended to affect a judicial decision are presumptively public. The March 31, 2017 Memorandum and Order, at 8-9, put DiMasi on notice that any letter from a doctor would be relied upon by the court in deciding whether to modify the conditions of Supervised Release. DiMasi now has submitted such a letter and the court has relied on that letter in reaching its decision. Accordingly, any personal privacy interest DiMasi may have in the information contained in that letter does not outweigh the presumption of public access in this case. See Kravetz, 706 F.3d at 63-4. The court also finds that any privacy interest of the doctor does not outweigh the presumption of public access. See id. at 62-3. Therefore, the doctor's letter is being made Exhibit 1 to this Memorandum with only DiMasi's date of birth redacted.

In view of the foregoing, on May 19, 2017, the Probation Department recommended that the court allow DiMasi's home-confinement to end as previously scheduled on May 22, 2017. It also recommended that the condition of Supervised Release requiring that DiMasi be monitored while eating and drinking be removed. The court's usual practice is to follow a recommendation of the Probation Department unless there is cause to question whether it is well-informed and reasonable. In this case, the court finds that the Probation Department's recommendations are properly supported and reasonable.

Therefore, it is hereby ORDERED that:

1. The Special Condition requiring six-months home detention shall end on May 22, 2017.

2. The Special Condition requiring that DiMasi be monitored by a member of his family, or a professional health aide, whenever he eats or drinks is REMOVED.

3. All other conditions of DiMasi's Supervised Release remain in effect.

/s/ Mark L. Wolf
UNITED STATES DISTRICT JUDGE